# ORPHANS' COURT OF LACKAWANNA CO.

### M. B. RYMER vs. W. B. SWICK, Guardian.

NUNCUPATIVE WILL—BEQUEST—LIFE INSURANCE POLICY.

A policy on the life of the deceased was made payable to his daughter, but was bequeathed to his wife. HELD, that the right to the proceeds of the policy vested in the payee at the time of its execution, and that this right could not be divested or controlled by testamentary disposition.

Opinion by HANDLEY, P. J.

This is a case stated for the opinion of the court. It shows that the plaintiff is the widow of James Rymer, late of Lackawanna county; that the defendant is the guardian of Mandane Rymer, a minor child of said James Rymer; that said Rymer was at the time of his death, insured in the Masonic Benefit Association, in the sum of two thousand dollars, payable to the said Mandane Rymer; that just previous to his death, Rymer bequeathed, by a nuncupative will, the said sum of two thousand dollars  *  *  * to said M. B. Rymer, plaintiff here, which said will has been duly proved and admitted to probate by the Register of Lackawanna county; that the said association has paid said sum of two thousand dollars, due upon said policy, to the defendant here, as guardian of the said minor child; that if the court is of the opinion that said James Rymer could dispose of said two thousand dollars by a nuncupative will, then judgment to be entered for the plaintiff for the sum of two thousand dollars, and costs, otherwise judgment for the defendant.

Every will must be in writing, unless the person making the same shall be prevented by the extremity of his last sickness. Personal estate may be bequeathed by a nuncupative will, under certain restrictions: 2 Purd. Dig. 1475, § 8. The restrictions mentioned in statute are omitted in the cases stated, hence we are unable to say whether the will of Rymer falls within these restrictions or not.

But there is another and more important question in

this case, namely: What right had Ryner to bequeath the proceeds of this policy to his wife, when it was payable by the terms of the policy to his daughter? It is a well-established rule in insurance law, that when a father takes out an insurance on his life, payable to a child of his, the title of such policy vests in such child from the date of its execution: In Re. Kugler, 23 La. An. 455; 8 Biglow's Reports, 592: Chapin vs. Fellows, 36 Com. Rep. 132.

Ryman having nothing to bequeath, his nuncupative will, so far as this policy and the money arising from the same is concerned, goes for nothing.

The Prothonotary is directed to enter judgment in this case in favor of the defendant, and against the plaintiff.

M. J. Wilson, Esq., for defendant.

W. B. Swick, Esq., P. P.

---

## NOTES OF RECENT DECISIONS IN SUPREME COURT OF PENNSYLVANIA.

A municipal claim for paving does not lie against the road-bed of a railroad company. It is immaterial to such purpose whether the railroad company own the fee in, or merely the easement over, the land sought to be liened.

The right of way acquired by a railroad company is exclusive at all times and for all purposes.

The liability of real estate of a railroad company other than the road-bed, for a municipal claim for paving, *not decided*.

City of Philadelphia vs. Phila. Wilm. and Balt. R. R. Co., 9 Casey, 41, followed.—*Junction R. R. Co. vs. Phila.*

---

A privilege or servitude annexed to a property in favor of an adjoining property, must be palpable and manifest, and notoriously permanent in its nature. Where an ex-

amination of the premises would show nothing more than a mere temporary arrangement for the convenience of tenants, a sheriff's vendee will take the property freed from the burden of such an arrangement. —*Adams Appeal.*

An affidavit of defence to a *sci. fa.* to revive a judgment was filed by a terre-tenant, setting forth that other lands bound by the judgment had been sold at sheriff's sale for a sum sufficient to pay the judgment, and that the judgment-creditor had neglected to present his claim; and further that the judgment-creditor had allowed his judgment to expire as to other lands:

*Held*, to be insufficient.—*Schoonover vs. Pierce's Admr.*

The mere fact that a petition to the Orphans' Court for the sale of lands, which otherwise comes properly within the purview of the Act of March 29, 1832, recites that the petitioners are "desirous that the land be sold so as to bar any estate or remainder therein, . . . . so that the purchaser will take an indefeasible title thereto" will not of itself be sufficient to bring the case within the fifth section of the Act of April 18, 1853, so as to cause the proceeds of the sale to retain their character as realty; if there be no contingent remainders or entails (such as are contemplated by the latter Act), these words are mere surplusage, and a conversion takes place.— *Wagner's Appeal.*

Though one who voluntarily assumes to do something without consideration be not liable for non-feasance, yet if he does anything, he is bound to do it rightly according to his agreement.

A, being informed that a judgment debtor (who was his brother) was in failing circumstances, and that he had better issue an execution to protect himself, and learning at the same time that the debtor was largely indebted to B, his housekeeper, procured a judgment-note in her

favor for the amount of her claim, and voluntarily agreed to look after it for her. He afterwards caused the judgment note to be entered up, and executions to be issued upon it and his own judgment at the same time. In an action by B against A to recover her *pro rata* share of the amount realized from the sale of the debtor's property:

*Held,* that she could recover. ·

*Held further,* that the promise was not within the statute of frauds.—*Fairlamb vs. Hampshire.*

----

The personal estate of a decedent is the primary fund for the payment of all debts, and a judgment which was a lien on the real estate of the decedent in his lifetime, is entitled to share *pro rata* with the unsecured debts in its distribution.

In the distribution of a decedent's estate, where there are two funds, one arising from the personalty, and one from the sale of real estate, and there are both lien creditors and unsecured creditors, the personalty fund must be distributed first, *pro rata*, among both classes of creditors, and the realty afterwards among the judgment creditors alone, in the order of their liens.

Ramsay's Appeal, 4 Watts, 71, commented upon.

For purposes of distribution, there is no distinction between solvent and insolvent estate; the order of paying the debts is the same in both cases. —*Masons Appeal.*

----

In *Thompson vs Daville*, 59 Ga. 472, the case of a contested will, our judge says: "We do not see how a court can know, judicially, that the limits of the family and of nature are co-terminous, and that a man never breaks through nature until he leaps over the family wall."

----

Of *Jones vs. Parker*, 60 Ga. 500, the court say: "The case came up before as a legal case, in plain, legal clothing, 55 Ga. 11. It comes now in a mixed costume, partly legal and partly equitable."